UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARIO PASCUCCI,**

       **Plaintiff,**                       Case No. 18-cv-13937

       v.                               District Judge Victoria A. Roberts

**COMMISSIONER OF**               Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Mario Pascucci seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 12). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED**, and that the case be dismissed in its entirety.

## II.    PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") on August 19, 2016, alleging that he has been disabled since April 18, 2016. (TR 144–53.) The Social Security Administration initially denied Plaintiff's claims on March 1, 2017. (TR 65–68.) On January 29, 2018, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Therese Tobin. (TR 33–54.)

On June 14, 2018, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 12–22.) Plaintiff requested review by the Appeals Council, which was denied on October 24, 2018. (TR 1–5.) On December 18, 2018, Plaintiff commenced this action for judicial review. (Docket no. 1.) The parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 11; docket no. 12.)

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues. (Docket no. 11, pp. 4–8.) In addition, the ALJ summarized Plaintiff's medical record (TR 14–20), and Defendant adopted the ALJ's recitation of the facts (docket no. 12, p. 4). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 19, 2016, the application date. (TR 14.) In addition, the ALJ found that Plaintiff had the

following severe impairments: "left ankle fracture and depression." (TR 14.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15.) The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), subject to the following non-exertional limitations:

- Plaintiff can only occasionally balance or climb ladders, ropes, scaffolds, ramps, or stairs;
- Plaintiff can tolerate no exposure to unprotected heights and dangerous machinery;
- Plaintiff is limited to performing simple, routine tasks;
- Plaintiff's use of judgment in the workplace is limited to simple work-related decisions;
- Plaintiff's ability to deal with changes in the work setting is limited to simple work-related decisions.

(TR 16.) Based on this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of jobs that exist in significant numbers in the national economy, including hand packer, small products assembler, and laundry checker. (TR 21.) Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from the application date through the date of the decision. (TR 22.)

V.   **LAW AND ANALYSIS**

   A.   **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal

standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

> (1) Plaintiff was not presently engaged in substantial gainful employment; and
>
> (2) Plaintiff suffered from a severe impairment; and
>
> (3) the impairment met or was medically equal to a "listed impairment;" or
>
> (4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.    Analysis**

Plaintiff contends that the ALJ erred at step three of the analysis by determining that he does not meet or medically equal Listing 1.02 of Appendix 1 to Subpart P of 20 C.F.R. § 404. (Docket no. 11, pp. 9–13.) This objection has a procedural component and a substantive component.

    *1. Procedural Component*

Plaintiff alleges that the ALJ failed to provide a reasoned explanation of her determination that he did not meet or medically equal Listing 1.02. (Docket no. 11, pp. 10–11.) However, "the

5

[ALJ] is not required to articulate specific evidence supporting his or her finding that the [claimant's] impairment(s) does not medically equal a listed impairment." *Titles II & XVI: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Review Process to Make Findings About Med. Equivalence*, SSR 17-2P (S.S.A. Mar. 27, 2017). Instead, "a statement that the [claimant's] impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id*. The ALJ's "articulation of the reason(s) why the [claimant] is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id*. Accordingly, the ALJ properly explained her determination that Plaintiff does not meet or medically equal Listing 1.02.

    2. *Substantive Component*

Plaintiff contends that he meets or medically equals Listing 1.02. (Docket no. 11, pp. 11–13.)

An individual meets Listing 1.02, "major dysfunction of a joint," if he is diagnosed with a "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and [offers] findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" with "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in [section] 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.

Defendant emphasizes that an impairment matches a listing only where it "meet[s] all of the specified medical criteria." (Docket no. 12, p. 7 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).)

In her decision, the ALJ cited medical evidence showing that Plaintiff's ankle impairment did not meet the "inability to ambulate effectively" element of Listing 1.02. (TR 15.) The Social Security regulations define that element as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b.

Applying that definition to this case, Plaintiff's medical records indicate that he retains the ability to ambulate effectively. As the ALJ observed, Plaintiff had surgery to repair a fracture of his left ankle in the spring of 2016. (TR 17.) After the surgery, Plaintiff was instructed to wear a walking boot. (TR 237.) By January of 2017, he reported that he was able to walk for "more than an hour" and did "better with his boot." (TR 244.) In March of 2017, imaging of Plaintiff's ankle showed a "medially based nonunion," which was inhibiting Plaintiff's recovery. (TR 245.) But by July of 2017, he was "doing better," with decreased pain and swelling. (TR 251.) He still wore his walking boot, but sometimes did not use it at home. (*Id.*) He reported being able to walk "anywhere from 30 minutes to an hour" and was "not taking any pain medication" at that time.

7

(*Id.*) By September of 2017, Plaintiff's "fracture appear[ed] to be healed," and Dr. Ferras Zeni opined that Plaintiff "would benefit from hardware removal." (TR 255.) Although Plaintiff continued to report pain and swelling, additional imaging showed "[n]o acute fracture nor malalignment" (TR 269) and doctors continued to recommend removal of the surgical hardware (TR 275).

This evidence demonstrates that Plaintiff could "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *See* § 1.00B2b. Moreover, even if Plaintiff needed to wear a supportive boot while walking, that factor would not result in an "inability to ambulate effectively" because Plaintiff would retain the use of his hands. *See id*.

Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's did not demonstrate an "inability to ambulate effectively" and thus did not meet or medically equal the criteria of Listing 1.02.

## VI. CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED**, and that the case dismissed in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with

specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 3, 2019         s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: October 3, 2019         s/ Leanne Hosking
                               Case Manager